# United States Court of Appeals for the Federal Circuit

---

**YC RUBBER CO. (NORTH AMERICA) LLC, SUTONG TIRE RESOURCES, INC., MAYRUN TYRE (HONG KONG) LIMITED, ITG VOMA CORPORATION, KENDA RUBBER (CHINA) CO., LTD.,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2021-1489, 2021-1698, 2021-1699, 2021-1700

---

Appeals from the United States Court of International Trade in No. 1:19-cv-00069-MAB, Judge Mark A. Barnett.

---

Decided: August 29, 2022

---

NICHOLAS SPARKS, Hogan Lovells US LLP, Washington, DC, argued for plaintiffs-appellants ITG Voma Corporation, Mayrun Tyre (Hong Kong) Limited, Sutong Tire Resources, Inc., YC Rubber Co. (North America) LLC. Plaintiff-appellant ITG Voma Corporation also represented by CRAIG A. LEWIS, JONATHAN THOMAS STOEL.

NED H. MARSHAK, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, New York, NY, for plaintiffs-

appellants YC Rubber Co. (North America) LLC, Sutong Tire Resources, Inc.  Also represented by ALAN LEBOWITZ, MAX F. SCHUTZMAN; JORDAN CHARLES KAHN, Washington, DC.

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, for plaintiff-appellant Mayrun Tyre (Hong Kong) Limited.  Also represented by PATRICK KLEIN, RICHARD F. O'NEILL, Seattle, WA.

LIZBETH ROBIN LEVINSON, Fox Rothschild LLP, Washington, DC, for plaintiff-appellant Kenda Rubber (China) Co., Ltd.  Also represented by BRITTNEY RENEE POWELL, RONALD MARK WISLA.

ASHLEY AKERS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, JEANNE DAVIDSON, PATRICIA M. MCCARTHY; AYAT MUJAIS, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

_____

Before NEWMAN, SCHALL, and PROST, *Circuit Judges*.

NEWMAN, *Circuit Judge*.

This appeal is from the second administrative review of antidumping duties for certain passenger-vehicle and light-truck tires from the People's Republic of China.  Under review, there were forty-two exporters and producers of the subject products.  The Department of Commerce initially selected two respondents as representative; one of these two then withdrew from the review, and Commerce reviewed the remaining respondent and applied the resultant antidumping duty rate to all exporters and producers subject to review.  Commerce denied all requests to

withdraw from the review after publishing its Preliminary Results.

On appeal by several exporters and producers (collectively, "YC Rubber"), the Court of International Trade ("CIT") affirmed. This appeal followed.

## BACKGROUND

This second administrative review was initiated on October 16, 2017. *Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 Fed. Reg. 48,051, 48,055 (Oct. 16, 2017). Pursuant to 19 U.S.C. § 1677(c)(1), Commerce is generally required to examine all known exporters/producers of the subject products and determine an individual weighted-average dumping margin for each exporter and producer. As is routine, Commerce allowed individual exporters/producers to apply for separate rate status. Such respondents receive an individually calculated dumping margin separate from the country-wide margin.

§ 1677(c) Determination of dumping margin

(1) General rule

In determining weighted average dumping margins under section 1673b(d), 1673d(c), or 1675(a) of this title, the administering authority shall determine the individual weighted average dumping margin for each known exporter and producer of the subject merchandise.

During the second review, forty-two exporters and producers applied for and were initially granted separate rate status. Due to the high number of separate rate respondents, Commerce determined that it would not be feasible to review each of them individually. *U.S. Dep't of Commerce Respondent Selection Mem.* (Apr. 12, 2018), Appx223–231.

Thus, Commerce invoked § 1677(c)(2), which provides the following exception:

> (c)(2) Exception
>
> If it is not practicable to make individual weighted average dumping margin determinations under paragraph (1) because of the large number of exporters or producers involved in the investigation or review, the administering authority may determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting its examination to—
>
> (A) a sample of exporters, producers, or types of products that is statistically valid based on the information available to the administering authority at the time of selection, or
>
> (B) exporters and producers accounting for the largest volume of the subject merchandise from the exporting country that can be reasonably examined.

Several exporters requested that Commerce select three mandatory respondents for its sample. However, Commerce selected only two mandatory respondents: Zhaoqing Junhong Co., Ltd. ("Junhong") and Shandong Haohua Tire Co., Ltd. ("Haohua"). *Selection Mem.,* at 7. Commerce explained that it selected these two because they were "the top two publicly identifiable exporters/producers of passenger vehicle and light truck tires sold to the United States." *Id.*

On April 12, 2018, Commerce issued its initial questionnaires to Junhong and Haohua. Two weeks later, Haohua gave notice of its withdrawal from participation in the review. *Letter from DeKieffer & Horgan, PLLC to the Honorable Wilbur L. Ross, Jr., Sec'y of Commerce,* (Apr. 26, 2018); Appx408–411. Commerce did not select a

replacement respondent, and over the next three months Commerce investigated only Junhong.

On September 11, 2018, Commerce issued its Preliminary Results based on the examination of Junhong and applied an individual dumping margin of 73.63%. This margin was then designated as the rate for all of the exporters and producers.

Several separate rate respondents contested Commerce's decision to apply the 73.63% margin to all other entities because this margin was based on examination of only one respondent. Several respondents also took issue with how Junhong's individual rate was calculated. In particular, they disagreed with Commerce valuing Junhong's factors of production by selecting Thailand as the primary surrogate country and disregarding Thai import values from India, Indonesia, and South Korea. Commerce explained that the Thai import values were disregarded because they came from countries providing non-industry-specific export subsidies.

Several respondents then sought to withdraw their review requests. Commerce denied these requests as untimely, for they were submitted after the 90-day period established by 19 C.F.R. § 351.213(d)(1).

On April 22, 2019, Commerce issued the Final Results for the second review and addressed various concerns that had been raised. Commerce continued to use a single mandatory respondent, Junhong, for its investigation but reduced the weighted-average dumping margin to 64.57%. Commerce applied this rate to all participants in the review. *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China*: *Final Results of Antidumping Duty Administrative Review 2016-2017*, 84 Fed. Reg.17,782–83 (Apr. 26, 2019). Commerce stated that section 1677(c)(2) does not require it to base the rate on examination of more than one exporter or producer. Commerce

stated that after Haohua's withdrawal, "no exporter/producer subject to the review requested individual examination, requested treatment as a voluntary respondent, submitted voluntary questionnaire responses, or submitted a request for Commerce to select an additional respondent." *Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Issues and Decision Memorandum for the Final Results of the 2016-2017 Antidumping Duty Administrative Review*: 2016-2017, (Dep't of Commerce Apr. 19, 2019).

YC Rubber, Sutong Tire, and ITG Voma, along with Mayrun Tyre (Hong Kong) Ltd. and Kenda Rubber (China) Co., Ltd., sought review of the Final Results by the CIT pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c). The CIT held that Commerce's use of a sole mandatory respondent was a reasonable exercise of agency discretion. The court also determined that Commerce's interpretation of § 1677f-1(c)(2)(B) was permissible, and the court deferred to Commerce's reading of the statute.

The CIT sustained Commerce's decision to exclude Thai import data from India, Indonesia, and South Korea when determining surrogate values for Junhong. The court held that Commerce's determination was supported by substantial evidence because Commerce had determined that broadly available export subsidies existed as determined in prior administrative reviews. *Y.C. Rubber Co., LLC v. United States,* 487 F. Supp. 3d 1367, 1386 (Ct. Int'l Tr. 2020).

After the CIT affirmed Commerce's Final Results, YC Rubber, Sutong Tire, and ITG Voma filed the present appeal on the grounds that 1) Commerce impermissibly interpreted § 1677(c)(2) and based the separate rate dumping margin on the examination of a single respondent; 2) Commerce's application of Junhong's rate to other separate rate respondents is unsupported by substantial evidence and

unlawful; 3) Commerce's decision to deny the withdrawal requests is unsupported by substantial evidence; and 4) Commerce's decision to exclude Thai import data from India, Indonesia, and South Korea when determining Junhong's factors-of-production value is unsupported by substantial evidence. Appellant Mayrun Tyre joins the appeal on grounds 1) and 3).

## DISCUSSION

The Federal Circuit reviews tariff decisions of the CIT de novo; thus, we apply the same standard used by the CIT to review the Commerce decision. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1373 (Fed. Cir. 2015). Pursuant to 19 U.S.C. § 1516a(b)(1)(B)(i), "[our] court shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record or otherwise not in accordance with law." Substantial evidence is "'more than a mere scintilla, as well as evidence that a reasonable mind might accept as adequate to support a conclusion,' and Commerce's 'finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.'" *SolarWorld Americas, Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (quoting *Downhole Pipe & Equip., L.P.*, 776 F.3d at 1374). To implement this standard, Commerce must provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

## I

The statute requires a reasonable foundation for the average dumping margin calculated for multiple importers. If a large number of exporters and producers are under review, Commerce may "determine the weighted average dumping margins for a reasonable number of exporters or producers by limiting examination to— a sample of exporters, producers or types of products that is statistically

valid . . . or [to] exporters and producers accounting for the largest volume of the subject merchandise." 19 U.S.C. § 1677(c)(2)(B).

The government states that nothing in § 1677f-1(c)(2)(B) compels Commerce to individually review more than one respondent, and that Commerce's position that it suffices to review only one respondent warrants *Chevron* deference. *See Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984). When reviewing an agency's interpretation of a statute under *Chevron,* we first determine "whether Congress has directly spoken to the precise question at issue," and if so, the court must follow Congress's intent. *Id.* at 842. When the statute is silent or ambiguous, the court must determine whether the agency's interpretation is reasonable. *Id.* at 842–45.

We conclude that Commerce's interpretation is contrary to the statute's unambiguous language. The statute calls for all respondents to be individually investigated, unless the large number makes separate review impracticable. This statutory "exception" authorizes review of a smaller number of exporters or producers than have requested review. 19 U.S.C. § 1677f-1(c)(2). The question is whether the statute permits Commerce to review a single exporter or producer when multiple have requested review and Commerce has not demonstrated that it was otherwise reasonable to calculate the all-others rate based on only one respondent.

The criterion for a reasonable number is set forth in § 1677(c), as whether the sample rate is "statistically valid." The statute generally requires that the "reasonable number" is greater than one. It provides:

19 U.S.C. § 1673d(c)(5)  Method for determining estimated all-others rate

(A) General rule

> For purposes of this subsection and section 1673b(d) of this title, the estimated all-others rate shall be an amount equal to the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under section 1677e of this title.

(B) Exception

> If the estimated weighted average dumping margins established for all exporters and producers individually investigated are zero or de minimis margins, or are determined entirely under section 1677e of this title, the administering authority may use any reasonable method to establish the estimated all-others rate for exporters and producers not individually investigated, including averaging the estimated weighted average dumping margins determined for the exporters and producers individually investigated.

In addition, 19 U.S.C. § 1677f-1(c)(2) specifies that Commerce "may determine the weighted average dumping margins for a reasonable number of exporters or producers." Congress contemplated the possibility of multiple exporters and producers, and that antidumping duties could be determined for a reasonable number of exporters and producers that was less than the total number. To be sure, Commerce correctly notes that "unless the context indicates otherwise . . . words importing the plural include the singular." Appellee's Br. 15 (citing 1 U.S.C. § 1). But here, Commerce must "determine the weighted average" for that reasonable number, and Commerce provides no reason why it would be reasonable to "average" a single rate. We conclude that a "reasonable number" is generally more than one.

Notably, the CIT has reached the same conclusion we arrive at today.  In *Shaeffler Italia S.R.L. v. United States*, the court explained:

> In using the terms "reasonable number of exporters or producers" and "large number of exporters or producers" in section 777A(c)(2) of the Tariff Act, Congress has directly spoken to the precise question at issue.  The plural term "*reasonable* number of *exporters* or *producers*," read according to its plain meaning, does not encompass a quantity of one.  19 U.S.C. § 1677f-1(c)(2) (emphasis added).

781 F. Supp. 2d 1358, 1362–3 (Ct. Int'l Tr. 2011) (holding that "a reasonable number of exporters or producers must be greater than one"); *see also, e.g., Mid Continent Nail Corp. v. United States*, 949 F. Supp. 2d 1247, 1269 n.18 (Ct. Int'l Tr. 2013) (referring to "the incontrovertible observation that '[t]he plural term "*reasonable* number of *exporters* or *producers*," read according to its plain meaning, does not encompass a quantity of one'" (emphases in original)).

For these reasons, we conclude that Commerce erred in relying on a single entity for calculation of a dumping margin for all respondents.

## II

Having determined that Commerce unlawfully restricted its examination to a single mandatory respondent, substantial evidence does not support Commerce's application of Junhong's rate to the other separate rate respondents.

Appellants also ask us to decide whether Commerce's decision to exclude Thai import data from India, Indonesia, and South Korea when determining Junhong's factors of production value is correct.  Such a decision is premature, for these fact-dependent situations may vary with the specific circumstances under review.  We also do not reach

Appellants' challenge to Commerce's decision to deny Appellants' withdrawal requests.

## CONCLUSION

We conclude that Commerce erred in restricting its examination to only one exporter/producer. We vacate the decision of the Court of International Trade, and remand for further proceedings in conformity with this opinion.

**VACATED AND REMANDED**

### COSTS

No costs.